# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA LEIGH PARISE, | ) | Case No. 4:25-cv-00613 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Sandra L. Parise applied for disability insurance benefits and supplemental security income benefits, and the Commissioner of Social Security denied her application. After a hearing, an administrative law judge also denied her application. Plaintiff appealed, but the Appeals Council denied her request for review. Then Plaintiff filed this action, seeking review in federal court. For the reasons that follow, the Court **AFFIRMS** the Commissioner's denial of Plaintiff's applications for disability insurance benefits and supplemental security income benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff first applied for disability insurance benefits and supplemental security benefits on October 6, 2022, alleging a disability onset date of November 17, 2018. (ECF No. 6, PageID #35, #222 & #241–52.) Her claims were denied initially on July 6, 2023, and on reconsideration on October 5, 2023. (*Id.* PageID #140–43 &

#159–61)  On April 9, 2024, Plaintiff was represented by counsel at a hearing before an administrative law judge.  (*Id.*, PageID #35 & #59.)  On May 14, 2024, the ALJ issued a written decision finding Plaintiff not disabled and denying her claims.  (*Id.*, PageID #35–46.)  On February 11, 2025, the Appeals Council denied her request for review, rendering the administrative law judge's decision the final decision of the Commissioner of Social Security.  (*Id.*, PageID #26-28.)

### A.     Evidence Before the Administrative Law Judge

At the hearing before the ALJ on April 9, 2024, the record included the following facts and materials.

### A.1.    Relevant Medical Records

On November 2, 2020, Ms. Parise was examined at Doctors Pain Clinic due to a referral for neck and lower back pain and fibromyalgia.  (*Id.*, PageID #581–82.)  The consultation notes of Jason Sindledecker, a nurse practitioner, reflect that Ms. Parise also experienced bilateral hip and shoulder pain.  (*Id.*, PageID #581.)  Her history of present illness included multiple failed attempts at conservative outpatient medical management, including "physical therapy, non-steroidal anti-inflammatories, mild-to-moderate analgesics, muscle relaxants, heat and cold therapy, and rest."  (*Id.*)

On March 16, 2021, Ms. Parise's boyfriend called EMS because she was not leaving the house and had high levels of anxiety.  (*Id.*, PageID #381.)  Reportedly, she was no longer taking Ativan at the time of the call.  (*Id.*)  Upon her arrival to the emergency room, Ms. Parise refused treatment.  (*Id.*)  She stayed in the waiting room for three hours and then was re-registered for treatment.  (*Id.*)  She stated that her new physician at the time would not administer lorazepam and Percocet.  (*Id.*)  She

2

began taking Suboxone but found that she cannot take pain medication with Suboxone. (*Id.*). The treating physician recorded clinical impressions of acute anxiety, panic disorder, acute paranoia, and delusional disorder. (*Id.*, PageID #385.)

On March 17, 2021, Ms. Parise was admitted to the hospital. (*Id.*, PageID #405.) She was diagnosed with major depressive disorder and panic disorder with acute agoraphobia and moderate panic attacks. (*Id.*, PageID #409–10.) She was discharged five days later, on March 22, 2021. (*Id.*, PageID #439.)

At a follow-up appointment on May 25, 2021, Ms. Parise reported being off Suboxone. (*Id.*, PageID #694.) Her symptoms included anxiety. (*Id.*) There were no physical abnormalities in the physical examination portion. (*Id.*)

At an appointment on September 21, 2021, Ms. Parise was stable on her medication. (*Id.*, PageID #695.) Her symptoms included anxiety, depression, and mental illness, as well as joint and muscle pain. (*Id.*) Results of a physical examination were normal. (*Id.*)

On March 28, 2022, Ms. Parise sought medication refills and reported feeling pressure in her head and ears. (*Id.*, PageID #583.) Her symptoms included anxiety. (*Id.*) Results of a physical examination were normal. (*Id.*)

On July 1, 2022, Karen Anobile, APRN performed a psychiatric evaluation of Ms. Parise. (*Id.*, PageID #552–58.) She reported having been fired from her most recent job for being rude to a customer. (*Id.*, PageID #552.) At the time of the evaluation, she had a job offer at a casino but did not want to accept employment until she felt better emotionally. (*Id.*) In a checkbox form, Anobile noted that

Ms. Parise exhibited a depressed and anxious mood, flat affect, cooperative behavior, and impaired attention and concentration.  (*Id.*, PageID #556.)  Anobile diagnosed Ms. Parise with major depressive disorder, generalized anxiety disorder, and a possible diagnosis of attention hyperactivity disorder.  (Id., PageID #558.)

During a follow-up appointment with Anobile on July 29, 2022, Ms. Parise reported feeling so much better that she was "ready for job hunting." (*Id.*, PageID #559.) Anobile noted that Ms. Parise's mood and affect were improved.  (*Id.*)  In a checkbox form, Anobile reported that Ms. Parise exhibited a normal rate of thought process, a euthymic mood, full affect, normal speech, average behavior, and no cognitive impairment.  (*Id.*, PageID #561.)

On August 4, 2022, Ms. Parise attended an appointment with David Wilhelm, LSW.  (*Id.*, PageID #565–567.)  She was reported as doing well with her medications. (*Id.*, PageID #565.)  She felt as though she could begin looking for a job.  (*Id.*)  Wilhelm completed a checkbox form indicating that Ms. Parise's mood was euthymic and anxious, and her affect was within the normal range.  (*Id.*, PageID #566.)

On August 18, 2022, Ms. Parise met again with Wilhelm.  (*Id.*, PageID #568.) She was doing well with her medications and feeling more motivated.  (*Id.*)  Like last time, Wilhelm checked boxes indicating that Ms. Parise's mood was euthymic and anxious, with an affect within the normal range.  (*Id.*, PageID #569.)

On October 25, 2022, Dr. Michael Madison evaluated Ms. Parise for chronic pain, fibromyalgia, and substance use disorder.  (*Id.*, PageID #546–51.)  Dr. Madison completed a checkbox form indicating that Ms. Parise exhibited a normal rate of

thought process, euthymic mood, full affect, and no cognitive impairment. (*Id.*, PageID #548.) He also recommended that she try medical marijuana. (*Id.*, PageID #550.)

On April 1, 2023, Ms. Parise consulted with Dr. Magid Keramati. (Id., PageID #619–28.) As a result of his physical examination, Dr. Keramati diagnosed Ms. Parise with a cyst on her left foot, cervical spine tenderness with limited range of motion of the neck, thoracic spine tenderness, limited mobility of the low back, and bilateral shoulder pain with limited mobility. (*Id.*, PageID #622.) Dr. Keramati reported that she was alert, maintained good eye contact, and demonstrated normal memory and good concentration. (*Id.*, PageID #621.)

On April 20, 2023, Ms. Parise met with Anobile again. (*Id.*, PageID #643–48.) Anobile reported that Ms. Parise was doing "pretty good" despite her sister's recent nonlethal overdose. (*Id.*, PageID #643.) Anobile completed a checkbox form indicating that Ms. Parise exhibited a normal rate of thought process, a euthymic mood, full affect, and no cognitive impairment. (*Id.*, PageID #645.)

On June 7, 2023, during a follow-up appointment with Anobile, Ms. Parise again described feeling "pretty good." (*Id.*, PageID #630.) Anobile noted that Ms. Parise was not presently motivated to seek employment. (*Id.*) On a checkbox form, Anobile indicated that Ms. Parise had a normal rate of thought process, a euthymic mood, full affect, and no cognitive impairment. (*Id.*, PageID #632.)

On August 17, 2023, Ms. Parise followed up with Anobile. (*Id.*, PageID #636–41.) Ms. Parise reported that she had filed for disability and that mood swings

and anxiety were "mak[ing] things difficult." (*Id*., PageID #636.)  Anobile completed a checkbox form indicating that Ms. Parise exhibited a normal rate of thought process, a euthymic mood, full affect, and no cognitive impairment.  (*Id*., PageID #638.)

On December 6, 2023, Anobile completed a mental status examination of Ms. Parise.  (*Id*., PageID #750–751.)  The checkbox form indicated that Ms. Parise's mood was depressed and anxious, and her affect was flat.  (*Id*., PageID #750.)  Anobile noted that Plaintiff feels "sad this time of year," and that she feels alone.  (*Id*.)  Anobile also noted that Ms. Parise "continues trying for disability."  (*Id*.)

On December 27, 2023, Ms. Parise met with Wilhelm again.  (*Id*., PageID #667–69.)  She was doing well on her medications, and her sleep had improved.  (*Id*., PageID #667.)  Ms. Parise was described as unable to work and as having daily panic attacks.  (*Id*.)  Wilhelm completed a checkbox form indicating that Ms. Parise's mood was euthymic and anxious, with normal speech and normal-range affect.  (*Id*., PageID #668.)

On January 17, 2024, Ms. Parise followed up with Wilhelm.  (*Id*., PageID #744–46.)  She was doing well on her medications but also reported "feeling more anxious" and "looking to file for disability."  (*Id*., PageID #744.)

On March 21, 2024, Anobile completed a residual functional capacity form. (*Id*., PageID #728–33.)  In the RFC, Anobile diagnosed Ms. Parise with paranoia, panic attacks daily, isolated scattered thoughts, difficulty focusing, difficulty falling asleep, feeling hopeless with crying spells.  (*Id*., PageID #728.)  Anobile opined that

Ms. Parise was unable to work at the time of the exam due to isolation, frequent panic attacks, depression, and crying spells. (*Id.*)  Anobile also indicated that Ms. Parise would have problems interacting with others, specifically noting that supervision would be problematic. (*Id.*, PageID #730.)  With respect to adaptation and self-management, Anobile suggested that Ms. Parise "would have problems with directions and stamina working a full day." (*Id.*, PageID #731.)  Finally, Anobile opined that Ms. Parise "would have problems doing any work" due fibromyalgia, chronic pain, and rheumatoid arthritis. (*Id.*, PageID #733.)

Also on March 21, 2024, Anobile completed a mental status examination of Ms. Parise. (*Id.*, PageID #752–753.)  Anobile completed a checkbox form indicating that Ms. Parise exhibited a flat affect and depressed mood. (*Id.*, PageID #752.)

On April 18, 2024, Ms. Parise followed up with Anobile. (*Id.*, PageID #738–43.)  She reported being sad. (*Id.*, PageID #738.)  She also reported that her anxiety was at a level of 7 or 8 out of 10 most days and that depression was also high. (*Id.*)  In a checkbox form, Anobile recorded that Ms. Parise exhibited a normal rate of thought process, a euthymic mood, and full affect. (*Id.*, PageID #740.)  Anobile also checked boxes indicating that Ms. Parise was alert and oriented, exhibited normal speech, average demeanor, and that no cognitive impairment was reported or observed. (*Id.*)  In that same form, Anobile indicated that Ms. Parise had no suicidal or homicidal ideation, no hallucinations or delusions, and that she had good insight. (*Id.*, PageID #741.)

### A.2.    Prior State Agency Administrative Medical Findings

On June 30, 2023, Dr. Craig Billinghurst, a consulting physician for a State agency, evaluated Ms. Parise's residual functional capacity.  (*Id.*, PageID #103–05.) Dr. Billinghurst opined that Ms. Parise's overhead reaching was limited.  (*Id.*, PageID #104.)  Her bilateral upper extremities were limited to occasional overhead reaching. (*Id.*)  These findings were submitted for reconsideration to Dr. Leon Hughes, another State agency consulting physician.  (*Id.*, PageID #129–39.)  On October 2, 2023, Dr. Hughes confirmed that Ms. Parise's bilateral upper extremities were limited to occasional overhead reaching.  (*Id.*, PageID #136.)

### A.3.    Ms. Parise's Testimony

During the April 9, 2024 hearing, Ms. Parise testified that she was last employed in 2018 as a casino dealer.  (*Id.*, PageID #67–68.)  Before that, she worked as a hairdresser.  (*Id.*)

Further, Ms. Parise testified that she had fibromyalgia and rheumatoid arthritis and that these conditions caused her daily pain.  (*Id.*, PageID #72–73.)  She indicated that she was presently "in a major dark depression" and had been for six months.  (*Id.*, PageID #75.)  Also, she reported daily panic attacks.  (*Id.*, PageID #79.)

Ms. Parise testified that she rarely drives due to anxiety and that she receives rides to her appointments.  (*Id.*, PageID #67.)  In the previous month, she went shopping three times with her sister.  (*Id.*, PageID #77.)  She reported difficulty watching television due to attention deficit hyperactivity disorder.  (*Id.*, PageID #79–80.)

### A.4.    Testimony of Vocational Expert

Deborah Lee, a vocational expert, testified regarding Ms. Parise's past work as a casino dealer and hairdresser.  (*Id.*, PageID #82).  Also, the expert answered a series of hypothetical questions involving persons with a similar residual functional capacity to Ms. Parise.  (*Id.*, PageID #82–87.)  The vocational expert testified that there are suitable "light and unskilled" occupational profiles for someone of Ms. Parise's age, education, background, work experience, and psychological and physical condition.    (*Id.*, PageID #84–86.)    Specifically, the expert estimated approximately 38,000 positions as a mail clerk in the national economy, as well as approximately 84,000 positions as an office helper and 83,000 positions as an inspector hand packager.  (*Id.*)

### B.    The ALJ's Decision

After reviewing the evidence, the administrative law judge conducted the familiar five-step analysis set forth in 20 C.F.R. § 404.1520(a)(4) and determined that Ms. Parise is not disabled. (*Id.*, PageID #35–46.)

At step one, the ALJ found that the Ms. Parise has not engaged in substantial gainful activity since November 17, 2018, the alleged onset date of her claimed disability.  (*Id.*, PageID #37.)

At step two, the administrative law judge found that the claimant has the following severe impairments:  panic disorder with agoraphobia, major depressive disorder, anxiety disorder, posttraumatic stress disorder, fibromyalgia, cervicalgia, chronic pain syndrome, arthropathy, and lumbar spine degenerative disc disease. (*Id.*, PageID #37–38.)  The ALJ found that Ms. Parise's rheumatoid arthritis is a non-

9

medically determinable impairment because there was no formal diagnosis or related treatment for this condition found in the record. (*Id.*, PageID #38.)

At step three, the ALJ found that Ms. Parise does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926). (*Id.*)

With respect to mental impairments, the ALJ considered whether the Paragraph B criteria for mental impairment were satisfied. (*Id.*, PageID #39.) The satisfaction of Paragraph B criteria requires an extreme limitation of one, or a marked limitation of two, areas of mental functioning. *See* 20 C.F.R. § 404.1520. The ALJ found that in understanding, remembering, or applying information, Ms. Parise has a mild limitation. (*Id.*, PageID #39.) In interacting with others, her limitation is moderate. (*Id.*) Her limitations in concentrating, persisting, or maintaining pace as well as adapting or managing herself are also moderate. (*Id.*) The ALJ attributed these findings to the results of Ms. Parise's various mental status examinations, her testimony, and the evidentiary record as a whole. (*Id.*, PageID #39.) The ALJ considered Ms. Parise's mental limitations and opined that her mental impairments did not include two marked limitations or one extreme limitation, prompting the ALJ to find that the Paragraph B criteria were not satisfied. (*Id.*)

Before considering step four, the ALJ found that Ms. Parise had the residual functional capacity to perform light work:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can

frequently balance, crouch, kneel, and stoop; occasionally climb ramps and stairs, and crawl, but can never climb ladders, ropes, or scaffolds; can frequently reach overhead, in front and laterally, bilaterally; no work around unprotected heights or dangerous moving machinery; cannot perform work requiring specific production rate like assembly line work or work requiring hourly quotas; can understand, remember, and carry out simple, detailed, but not complex instructions; can deal with occasional changes in a routine work setting; can occasionally interact with supervisors and coworkers in a non-public work setting; and due to the claimant's mental health symptoms and impairments, she would be absent one day per month.

(*Id.*, PageID #40.)

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence and other evidence," in addition to "the medical opinion(s) and prior administrative medical findings." (*Id.*) The ALJ stated that Ms. Parise's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms are "not entirely consistent" with the evidence in the record. (*Id.*, PageID #43.) The ALJ additionally assessed the persuasiveness of the various medical providers whose assessments of Ms. Parise's medical and physical functionality are included in the record. (*Id.*, PageID #43.)

At step four, the ALJ found that Ms. Parise was unable to perform any past relevant work. (*Id.*, PageID #44.) In support of this determination, the ALJ pointed to the testimony of the vocational expert, finding that "the demands of the plaintiff's past relevant work exceed the above residual functional capacity." (*Id.*)

Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) The ALJ

11

considered Ms. Parise's age, education, work experience, and residual functional capacity in making its determination.  (*Id.*)  Using the above factors, the ALJ concluded that Plaintiff would be able to perform a "significant number of jobs in the national economy."  (*Id.*, PageID #45.)

## ANALYSIS

Under 42 U.S.C. § 405(g), the findings of an administrative law judge are conclusive if substantial evidence supports them.  Therefore, the Court limits its review to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any claimed legal errors de novo.  *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003).  "Substantial evidence" is more than a scintilla, but less than a preponderance.  *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.*  If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts.  42 U.S.C. § 405(g).

Plaintiff maintains that the administrative law judge "failed to account for the 'total limiting effects' of Plaintiff's impairments pursuant to 20 C.F.R. §§ 404.1520c, 404.1529, and 404.1545(e), resulting in a decision that is not supported by substantial evidence."  (ECF No. 7, PageID #754.)  Specifically, Plaintiff argues that the ALJ's finding of her residual functional capacity "does not sufficiently account" for the limitations outlined that Anobile outlined and her vocational limitations.  (*Id.*,

12

PageID #767.)  Plaintiff focuses primarily on the ALJ's finding that Anobile was unpersuasive, contending that "the ALJ's analysis of Nurse Anobile's opinion is not supported by substantial evidence."  (*Id.*)  Then, Plaintiff argues that "substantial evidence does not support that she can lift up to 20 pounds, as light work requires, or stand and walk for up to six hours in an eight-hour workday, at least not without the option to frequently alternate positions."  (*Id.*, PageID #768.)   Plaintiff argues that these errors together constitute the ALJ's failure to account for the "total limiting effects" of Plaintiff's impairments.  (*Id.*)

## I.     Nurse Anobile

 The ALJ concluded that Anobile's opinion was unpersuasive because it "provided little explanation or supporting evidence" and was "inconsistent with the medical record as a whole."  (ECF No. 6, PageID #43.)  Plaintiff argues that Anobile's opinion was supported, as 20 C.F.R. § 404.1520c(b)(2) requires, and was consistent with the medical record.  (ECF No. 7, PageID #770 & #772.)

However, in the medical record one finds notable differences between Anobile's assessment of Ms. Parise's cognitive and mental health outlook on March 21, 2024 (the date of the RFC opinion) and the notes of Ms. Parise's other providers, which report effective results with medication and significant overall symptomatic improvements.  (*See e.g.,* ECF No. 6, PageID #565, #568, #630, #667, #695 & #744.) Additionally, on dates other than March 21, 2024, Anobile's notes often echoed those more positive reports Ms. Parise and reflect progress and success with medication. (*Id.,* PageID #559, #643 & #630.)  These discrepancies amount to substantial evidence of inconsistency.

13

Also, the Court notes that several of the relevant reports from Anobile were checkbox forms lacking any description or narrative summary about Ms. Parise's condition.  (*Id.*, PageID #552–64, #630–41, #729, #752–53.)  The Sixth Circuit has held that check-box forms, which only require an individual to check a box or fill in blanks that lack other narrative or explanation, are conclusory opinions that amount to "weak evidence at best." *Hernandez v. Commissioner* of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016) (citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993)).  To the extent that the ALJ gave these documents lesser weight in making her disability determination, she acted properly.

Plaintiff challenges the ALJ's finding that Anobile's opinion is inconsistent with Ms. Parise's "varied activities of daily living." (ECF No 7, PageID #773 (quoting ECF No. 6, PageID #43).)  She characterizes this phrase as "so vague as to render meaningful judicial review impossible."  (ECF No. 7, PageID #773.)  However, the Court is not "left to guess as to what the ALJ meant by 'varied activities of daily living'" because the term has specific meaning in the context of care and treatment relating to a person's physical condition and litigation about the same.  In any event, the ALJ expressly references those activities described earlier in her opinion.  (ECF No. 7, PageID# 774; ECF No. 6, PageID #43–44.)  For example, the ALJ described Ms. Parise's relevant activities of daily living:

> Regarding activities of daily living, claimant testified that she has a driver's license and is able to drive, but she rarely drives due to anxiety fears, she usually gets rides to appointments, and she currently lives with her friend and pet cat.  Finally, she said that she goes grocery shopping with her sister roughly three times per month, she last worked

14

in 2019 for Door Dash, and she has difficulty watching television due to lack of concentration stemming from ADHD.

(ECF No. 6, PageID #41.)  Additionally, the ALJ notes that Ms. Parise reported caring for her sister's cats and 17-year-old son while her sister was in rehabilitation.  (*Id.*, PageID #42–43.)  This latter report came on April 28, 2024, nearly one month after Anobile completed her residual functional capacity on March 21, 2024 and found that Ms. Parise would be off task 100 percent of the workday, could not sustain work activity, and would miss more than four workdays per month due to her immurements.  (*Id.*, PageID #728-33, 738.)  The ALJ considered Ms. Parise's reported activities to be inconsistent with Anobile's opinion.  (*Id.*, PageID #43.)  The Court finds that this portion of the ALJ's analysis does not involve impermissible post-hoc rationalization, as Plaintiff argues.  (ECF No. 10, PageID #798.)

Also, Plaintiff argues that the ALJ imposed an "implicit requirement that Nurse Anobile needed to provide objective evidence to support her opinion regarding subjectively experienced [mental health] impairments."  (ECF No. 7, PageID #772.)  But the ALJ merely weighed the most important factors of consistency and supportability to evaluate the persuasiveness of Anobile's opinion.  (ECF No. 6, PageID # 43–44.)  In doing so, the ALJ found that Anobile's opinion conflicted with other evidence, such as "claimant's significant improvement from her counseling sessions and psychiatric medications."  (*Id.*, PageID #43.)  Far from imposing impermissible requirements, the ALJ's explanation reflects a process faithful to the requirements of the Social Security Act.  *See* 20 C.F.R. § 404.1520c(b)(2).

15

In reply, Plaintiff argues that the ALJ's supportability analysis did not account for the psychiatric signs that existed to support Anobile's position or reflect evidence of Ms. Parise's symptoms and medications or of Anobile's supporting explanations. (ECF No. 10, PageID #796 & #798.)  Nothing in the record suggests that the ALJ did not consider this evidence when making her determination.  The ALJ "set forth her rationale on what are deemed to be the most two important factors—supportability and consistency."  *Lorie B v. Commissioner of Soc. Sec. Admin.*, No. 2:22-cv-2632, 2023 WL 6318074, at *4 (S.D. Ohio Sept. 28, 2023).  The Court determines that the ALJ provided sufficient evidence to support her findings regarding Anobile's medical and opinion evidence.

## II.     Vocational Expert

Plaintiff highlights the vocational expert's testimony that being absent more than once a month and being off task more than 20% of the day are limitations that preclude work.  (ECF No. 7., PageID #766–67; ECF No. 6, PageID #86–88.)  Still, the vocational expert ultimately testified that there are suitable "light and unskilled" occupational profiles for someone of Ms. Parise's age, education, background, work experience, and psychological and physical condition.  (*Id.*, PageID #84–85.)  Taking the vocational expert's testimony together with Anobile's opinion, the ALJ found that Ms. Parise was able to work in several occupations, precluding a finding of disability. Substantial evidence supports this decision of the administrative law judge.

## III.    State Agency Medical Consultants

Plaintiff argues that the ALJ erred because she did not address the limitation for overhead reaching that Dr. Billinghurst and Dr. Hughes identified.  (ECF No. 7,

PageID #768.) In response, the Commissioner points out that the ALJ asked the vocational expert a hypothetical question that encompassed this limitation. (ECF No. 9, PageID #787.) The vocational expert's response noted that the Dictionary of Occupational Titles does not specifically reference limitations in overhead reaching. (*Id.*, see also ECF No. 6, PageID #87.)

The Court agrees with the Commissioner. The ALJ's questioning of the vocational expert acknowledged the limitations that Dr. Billinghurst and Dr. Hughes identified. (ECF No. 6, PageID #87, #104 & #136.) Having been informed of Ms. Parise's occasional overhead reach limitation, the vocational expert still found that she could work as a mail clerk, office helper, and inspector hand packager. (*Id.*, PageID #84 & #86.) The vocational expert estimated that the number of available positions in each of these fields totaled 38,000, 84,000, and 83,000, respectively. (*Id.*) Accordingly, the Court discerns no reversible error.

## IV. Self-Described Limitations

Plaintiff argues that the ALJ could not have properly evaluated her self-described limitations because the ALJ did not adequately consider the medical opinion evidence, specifically that of Anobile and Drs. Billingshurst and Hughes. (ECF No. 10, PageID #799.) Because the ALJ adequately considered the medical opinion evidence, this argument misses the mark. Moreover, the record demonstrates that the ALJ evaluated Plaintiff's claims in relation to the medical evidence and opinions in the record. The ALJ's decision engaged with the record extensively, comparing Plaintiff's claims of disabling limitations to, for example, Ms. Parise's conservative treatment history for physical health impairments and the

17

unremarkable results of Dr. Magid Keramati's thorough physical examination (ECF No. 6, PageID #42-43 & #621–28.)  In short, the ALJ provided substantial evidence to support a finding that Plaintiff's physical and mental impairments did not satisfy the criteria for any listed impairment.

**CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's denial of Plaintiff's applications for disability insurance benefits and supplemental security income benefits.

**SO ORDERED.**

Dated:  March 27, 2026

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio